## Case No. 17,389a.

### WELLS v. The ANNE CAROLINE.

[22 Betts, D. C. MS. 171.]

District Court, S. D. New York. Jan. Term, 1856.[1]

COLLISION—PLEADING AND PROOFS—SAILING VESSELS ON CROSSING TACKS.

[1. In cases of collision at sea in open view of all parties, courts look carefully to the first version given, and view with distrust all additions or subtractions therefrom. Hence the court will cautiously restrain each party from setting up a case by his proofs which is contradictory to that made by his pleadings.]

[2. Omission of the libel to state facts which on the hearing are made cardinal points in the cause—such as the course and strength of the wind, the tacks on which the colliding vessels were running, how far from the shores the collision took place, etc.—is faulty pleading, and not in compliance with admiralty rule 23 of the supreme court.]

[3. A sailing vessel tacking up Delaware Bay in the midst of a squadron of similar vessels *held* in fault for keeping so negligent a lookout that she did not discover one of the other vessels, which was coming up very fast astern of her, and making her tacks but little to leeward, until she was within 40 or 50 yards.]

[4. When two sailing vessels on opposite tacks are crossing each other, and there is a probability of collision, the one on the starboard tack keeps close to the wind, and the one on the larboard tack must beat away, or be answerable for the consequences.]

[This was a libel by William H. Wells against the schooner Anne Caroline to recover damages for a collision.]

BY THE COURT. A fleet of more than 20 sailing vessels got under way, at about midday, the 11th February, 1854, from their anchorages near Cape May. The craft were all schooners. The wind was fresh from N. W. or N. N. W., and the tide making, but not at full flood. Between two and three o'clock p. m. the John C. Wells, owned by the libellant, running close hauled on the larboard tack, and heading N. N. E., and the Anne Caroline, owned by the claimants, running also close hauled on the starboard tack, and heading W. by N., came in collision in the channel between Crown shoal and the Jersey shore, nearest to the shoal, but far enough off to leave the John C. Wells sailing room sufficient to come safely about, if she desired to do so. The John C. Wells was heavily laden, nearly down to the water's edge. The Anne Caroline was the larger vessel, and in ballast, and was making the greatest speed, when fully under way. The Cape May channel into Delaware Bay, where the mass of vessels were at the time

---

[1] [Reversed in Case No. 17,389. Decree of circuit court modified by supreme court in 2 Wall. (69 U. S.) 538.]

beating their course, is a narrow inlet, having a channel of less than a mile in width, and the vessels were changing from one tack to the other in plain view and near proximity to each other. The day was clear, and nothing obstructed observation across and up and down the channel, except the transit of the various vessels, in progress, from point to point. These circumstances bound all parties to the exercise of active watchfulness and promptitude, and relieve the court from the perplexity attendant upon ascertaining facts surrounding a collision, which occurs in the night, or in thick or obscure weather. When collisions at sea take place open to the view of all parties, and become afterwards subjects of litigation, courts look carefully at the first version given of the transaction by the parties concerned, and distrust all additions to or abstractions from the original representation, particularly when made under oath. The English admiralty are perhaps more tenacious on this point than the American, and will rarely hear evidence of either party tending to give the case a character differing from that presented by his pleadings.

I have on other occasions animadverted upon this topic, and, conceding the solidity and usefulness of the general principle, have been disposed to look with leniency upon errors in pleadings, and accept evidence not absolutely inconsistent with them, which parties are enabled to produce, and thereby give a juster understanding of the causes than was possessed by them when the pleadings were prepared, without requiring the record to be reformed. In permitting that practice, drawn from the circumstances, the character of the parties and the principles governing this class of actions have been before assigned. It is sufficient now to say that the court has cautiously restrained each party from thus setting up a case by proofs contradictory to that made by his pleadings. In this instance, the allegations of the libel are, that on the afternoon of Saturday, February 11, 1854, the schooner John C. Wells was run into and sunk by the schooner Anne Caroline, and that the libellant is entitled to damages therefor to the amount of $5,000.

The libellant alleges on his information and belief, that the facts of the collision, that the John C. Wells was on a voyage from New York to Philadelphia, deeply laden, with a valuable cargo, and on the afternoon of February 11th she had arrived in Delaware Bay, and was running about N. E. up the eastern shore of the bay, close hauled, and going about three knots an hour; that the schooner Anne Caroline, which was a much larger vessel and was light, was also bound up the bay, and was at this time running in the same general direction, but further in shore; that the said Anne Caroline, before she had beat out her tack, suddenly and unexpectedly went about, and running about six knots an hour, directly towards the John C. Wells, carelessly and negligently and wrongfully ran into the said John C. Wells, striking her on her starboard quarter, so soon and with such force that she sunk in so short a period that her crew were barely able to escape with their lives. It further charges that the collision was caused by the negligence of those in charge of the Anne Caroline in coming about when they did, in running directly towards the said John C. Wells, in not changing their course, so as to avoid her, in having no proper lookout, and in not hailing the said John C. Wells, or otherwise giving timely notice of the course intended to be pursued by said Anne Caroline.

The libel omits all assertion of various particulars which on the hearing were made cardinal, if not vital, points in the cause, and were attempted to be established by the libellant by proof, the course and strength of the wind; the tacks upon which the two vessels were running, how far from either or both shores the collision took place, or how far from the eastern shore the Anne Caroline came about and the impediments on the west shore to the John C. Wells going nearer to it than the position she was in when the collision took place.

It is manifest that the libel furnishes a meager statement of facts, to justify the court in adjudging that the Anne Caroline was culpable in anything done by her. The opinions and conclusions of the libellant are asserted emphatically enough,—that her conduct was careless, negligent and wrongful, and that the collision was occasioned by her sole fault; but he does not state the manner his vessel was being navigated, or what acts were done on board her to prevent or escape the collision, not even that a hail was given from her to the Anne Caroline, as a warning to the latter vessel. This mode of pleading fails to fulfill the requirement of rule 23 of the supreme court, in not propounding the various allegations of facts upon which the libellant relies in support of his suit, so that the defendant may be enabled to answer distinctly and separately the several matters contained in each article. The difficulty under this form of pleading does not rest solely with the respondent in framing a proper reply, but the court cannot judicially find in the allegations a foundation for a decree in favor of the libellant: No facts are averred which exonerate him from fault, and none which fix culpability on the respondent necessarily conducing to the disaster, because it does not import a fault producing the collision, that the Anne Caroline came about unexpectedly, without running out her tack, and that she had no proper lookout, or ran directly towards the John C. Wells, or did not hail the latter vessel or otherwise give notice of the course she intended to pursue. The English admiralty demands the whole case to be stated in the libel, and will reject proofs at variance with or extraneous to the statements in the pleadings. The Anne & Jane, 2 W. Rob. Adm. 98, 104; The Virgil, Id. 201; The Ebenezer, Id. 209; The Speed, Id. 227, 228.

Without making the imperfection of the libel

a stringent ground of objection to the action, and recurring to the whole case made by the libellant's proof, it is necessary, before looking into the defence, to determine whether he has made out by his proofs a valid claim for damages against the Anne Caroline. Without he succeeds in this, the court cannot be called upon to criticise the sufficiency of the answer or the proofs produced in its support. The Hopper, 7 Cranch [11 U. S.] 389; The Boston [Case No. 1,673]; Jenks v. Lewis [Id. 7,280]; The Wm. Harris [Id. 17,695]. The master, first mate and a seaman are all the witnesses who were on board the schooner John C. Wells, who testify to her position or the acts of the John C. Wells to prevent the collision complained of, or to any particulars which impeded or embarrassed the maneuvers incumbent upon her to make on the occasion. The first mate says he was on the lookout about the middle of his vessel, and he thinks was a little forward of her main mast on the starboard side, and had a clear view of everything ahead. The John C. Wells came about on her long stretch and larboard tack, and proceeded about one-eighth of a mile, at the rate of four knots per hour, when the Anne Caroline came into her. The latter went about on that tack nearly at the same time with the Wells, and a little to leeward of the latter. He did not see her again until she was within forty or fifty yards of him, coming fast, on a 4 or 5 knot breeze (both vessels being then close hauled), and directly upon him. There was then time for her to have got out of the way by running up into the wind, but was not time for the John C. Wells to do anything in avoidance of her. There were a number of other schooners astern and to leeward of him, but he saw nothing to windward within two miles. The master of the Wells hailed the Anne Caroline, and then shoved his wheel down just as the vessels struck. Mr. Baker, the master, says he was at the wheel of the Wells when she tacked to the eastward. The Anne Caroline came round on the same tack about abreast of the Wells, then moving scarcely a mile an hour, just sagging off the shoal, and had not got her headway. The Anne Caroline was light, and running four or five knots towards him, both vessels close hauled. He did not see the Anne Caroline when she tacked with him off the shoal, nor at the time of her tacking east of him, but saw her just after she came about, and was making towards him. He saw her under the bow of the Wells. She was then short of a quarter of a mile from her. He hailed her to keep out of the way. There was not room on account of the shoal for his vessel to come about, and he could not any way avoid the Anne Caroline. She came right upon him without altering her course. He put his own wheel down, and ran forward as she struck. Does not know that his vessel was brought up by it into the wind at all. Bloomer, a man on the deck of the Wells, says he saw the Anne Caroline on the same course eastward with the Wells after the latter tacked. She was half a mile to leeward, and a little astern. No other vessel then ahead nearer than

1 or 1½ miles off. He then went below. Hearing some one speaking loud on deck, he came out, and, when he came up, saw the Anne Caroline, he thinks, 100 to 150 yards off, and, if she had then put her wheel up. she would have gone under the stern of the Wells, but the latter could not go about on account of the shoal, nor under the stern of Anne Caroline by putting her wheel up. There was no other vessel within two or three hundred yards of the two.

Examining the case made by the libellant, upon the law and the facts given in evidence by him, it is manifest that he was in fault on two essential particulars, either of which might have caused the collision, without supposing any blame on the part of the Anne Caroline. First, he was navigating in the midst of a squadron of other vessels, several of them, according to his own testimony, at short distances from him, and the accused vessel particularly coming up from astern very fast upon him, and making her tacks but little to leeward; yet he had no proper watch stationed, or else kept his lookout so negligently that he did not discover when she made her last larboard tack eastward, nor when she came about on the starboard tack, on which the collision took place. The call for vigilance in this respect was especially emphatic because of the numerous craft working their way nearly together against a breeze of 4 or 5 knots on a flood tide, and in a comparatively narrow channel, not exceeding one mile in width. and which necessarily exacted, from the varying speeds of the vessels, and the necessities of such navigation, frequent and abrupt changes of course.

The rule of navigation settled by the Trinity masters, sanctioned by the English admiralty courts, and by reiterated adjudications in the American tribunals, is, that when two sailing vessels on opposite tacks are crossing each other, and there is a probability, if their course is continued, they must come in contact, the one on the starboard tack keeps close to the wind, and the one on the larboard tack must beat away, or be answerable for the consequences. Abb. Shipp. 309, L, 236; John v. Paine, 10 How. [51 U. S.] 581. This rule does not depend, as is sometimes supposed, upon the fact that the vessels are approaching stem on. The George, 5 Notes of Cas. 368, 6 Notes of Cas. 53. Nor if the Anne Caroline was so far to windward that the master of the Wells might suppose she would go clear of him does that discharge the Wells of blame. Id. 56; The Woodpark, 7 Notes of Cas. 397. Whether the larboard tack should bear up or keep away will depend upon the relative positions and proximity of the approaching vessels. If the misfortune arises from the misconduct of the suffering party only, he must bear his own loss. Story. Bailm. § 608; 3 Kent, Comm. 231; The Woodrop-Sims. 2 Dod. 83. And it will be presumed her fault until she clearly proves the contrary. The Test, 5 Notes of Cas. 276 I find nothing in the evidence to relieve the Wells from the operation of this doctrine.

Giving her the advantage of proving the fact not alleged in the libel, that the Anne Caroline was not seen upon the starboard tack until she had approached so near that no reasonable effort by the Wells could avoid her, she has failed in establishing that fact. The master of the Wells saw the Anne Caroline short of a quarter of a mile off, and his mate forty or fifty yards, and both swear the distance was sufficient for her to have gone up into the wind, and thus have avoided the Wells. The master thinks the Wells could not have escaped the collision by the same maneuver, nor bear away under the stern of the Anne Caroline, because she was just coming round, and had scarcely got headway. His mate, however, and her crew attending to her sails and · movements, says she was running 4 or 5 knots, and had proceeded ⅛th of a mile on this tack, when met by the Anne Caroline. All either of these officers did in the emergency was to hail the Anne Caroline to get out of their way.

The master of the Anne Caroline had a right to rely upon the opposite vessel doing her duty, and could not properly deviate from her own course until it became palpable that the Wells did not discover her, or did not intend to change her direction. The Catherine, 17 How. [58 U. S.] 170; The Mary Bannatyne, 18 Law Rep. 528. I cannot regard the apology attempted to be made had it been satisfactorily proved, that the Anne Caroline was not discovered from the Wells until too late for her to take measures to escape the collision, as any lawful excuse for her inertion. The utmost indulgence ever allowed for such excuse, is where there is some natural impediment, obscurity of atmosphere, &c, which intercepts the sight. Peck v. Sanderson, 17 How. [58 U. S.] 178. Otherwise the law imposes upon parties the consequences resulting from their ·failing to guard against dangers which, with the exercise of reasonable diligence, they might discover and avoid. The Friends, 1 W. Rob. Adm. 478; The Test, 5 Notes of Cas. 276; 3 Kent, Comm. 294. There would be no safety to persons or property transported by water if this rule was not peremptory and inflexible. I do not think the libellant, with every effort to prove the best case for himself he could make out without being tied by his pleadings to any specific state of facts, has succeeded in discharging his vessel from culpable conduct in the transaction, or fastening it upon the Anne Caroline, and accordingly, by the familiar law of collisions, his suit cannot prevail. In this view of the case, it is useless to discuss the evidence offered on the part of the Anne Caroline to prove she had been properly conducted. She was on the privileged tack, and did not attempt to depart from it, until it became manifest that a collision was imminent. The law did not require her to do so before, and the court will not inquire whether, when she made the effort to avoid the Wells, the best maneuver to accomplish that end was adopted. The libellant cannot recover upon his own case. Label dismissed.

[NOTE. The decree of this court was reversed by the circuit court, and a reference ordered to ascertain the amount of libellant's damages. Case No. 17,389. For exceptions to the commissioners' report, see Id. 17,389b. An appeal was subsequently taken to the supreme court, where the decree of the circuit court was modified as to damages. 2 Wall. (69 U. S.) 538.]